We have one submitted case in this morning's docket. The rest of the cases will be heard in the sequence in which they appear on the docket sheet, starting with United States v. Short. Counsel for the appellant? Good morning, Your Honor. Yes, I'm Robert Kelleher. I represent the appellant Nancy Short. And I wanted to point out to the Court, before I begin my argument, over the weekend I found a Ninth Circuit case that I think is relevant that neither of the parties cited. The citation is 312, Fed Third, 1128. 312, Fed Third, 1128. Counsel, would you be sure to prepare some gum sheets and a quadruplicate and give it to the deputy clerk? You need to serve one on your opposing counsel. Yes, Your Honor. And that case actually does stand for the proposition that a defendant can, in a sense, create circumstances that make a victim vulnerable. Although that particular case on its facts is a good reverse barometer on why our victim in this case was not vulnerable. In the Nancy Short case, my client stole $300,000 from her mother, who was 82 years old. And the mother was in a nursing home at the time. And the Court reasoned that the mother was isolated and cut off by virtue of being in the nursing home. In this case that I just cited, the defendant was the wife of a diplomat from Thailand who brought a young woman over from Thailand. The victim in that case was non-English speaking, had a second grade education, and her passport was confiscated by the defendant. And she was completely cut off from the outside world. And in contrast to Mrs. Short's mother, who was voluntarily in a nursing home, had access to her bank telephonically, and apparently also she was able to get rides to the bank, had access to law enforcement. Counsel, what the District Court found was that Ms. Short created a record which followed her mother at St. John's Nursing Home that created this aura of Alzheimer's. And that it was the aura of Alzheimer's, that is the appearance of Alzheimer's, so that people at the nursing home thought she might have Alzheimer's. There was some question in their mind as to whether she did or not. But they did treat her in such a way. And that was a creation of your client. The District Court goes on to list that Ms. Short had isolated her mother. She had no access to a car. She did not have the power of attorney to Ms. Short. Ms. Short had access to her mother's mail. Why doesn't that make her a vulnerable victim? Because the people at the nursing home did not really believe the Alzheimer's diagnosis, which was not really a diagnosis but simply a misrepresentation. And the only impact that really had on this case was that when the mother contacted law enforcement, initially they disregarded her complaints. Right. But that was more of a speed bump. Within 30 days, law enforcement was investigating the case. And by that time, actually, the money was already pretty much gone or hidden away. Nancy Short was one step ahead of her mother the whole time, and she did get a two-level increase for that one, hiding assets. But I think that's kind of a red herring because the nursing home people didn't believe it. It was, in fact, not true that she had Alzheimer's. And the only people that really were influenced were law enforcement, and that was only for a brief period of time. The nursing home folks hooked her up, hooked the mother up with an attorney, an elder specialty attorney. If the police, if the investigation had been delayed by 30 days and Ms. Short had gotten additional funds out of her mother's account during those 30 days, would the vulnerable victim exception apply here? Well, the government would certainly have a stronger argument at that point. But the money had already been taken five weeks before the mother realized it had gone. You're arguing that there's no causal connection. Is that your argument? Correct. There's no causal connection. It's not really a relevant factor. This defendant stole from her own mother. Would the fact that the victim was the mother of the defendant be enough to classify as vulnerable victim? Well, now, this issue came up at sentencing as to abuse of a position of trust, and I don't have that at my fingertips. But there was a Ninth Circuit case that a mother-daughter relationship did not qualify for abuse of a position of trust. No, we're not talking about that feature. That's another basis for additional sentencing. We're talking about the vulnerable victim. Well, I don't know that the ---- I don't think I've seen a case that specifically holds that when the victim is the defendant's own mother, that qualifies. But I'm just wondering why it should not. Well, I mean, first of all, in a mother-child relationship, the parent would probably have the position of authority. Now, in this case, obviously the mother is elderly, but there's no evidence that she had Alzheimer's or didn't have her wits about her. And so I don't see that makes her any more vulnerable than any other potential victim just because she's the mother. All right. Anything further? No, Your Honor. I pretty much set it out in my brief, and I'll reserve it over time. You may do so, counsel. Thank you. We'll hear from the government. I'm Victoria. May it please the Court? I'm Victoria Francis, counsel for the United States in this proceeding. The issue before the Court was whether this victim was a vulnerable victim. And the Court considered not just the victim's age, which was 82, but the fact that this victim had lost her husband, so she was a widow, in August of 2000, had been moved to Montana from Texas, which was far away from where she had lived for the largest quantity of her life, so her only contacts were primarily this defendant, that this defendant, once they got to Montana, then proceeded to tell the elder abuse assessment doctor, not the elder abuse, the elder assessment doctor that the mother was exhibiting signs of Alzheimer's, which was more believable to the doctor and the nursing home because of the personal characteristic of 82 years of age. What about Mr. Kelleher's point that the staff did not believe that? The record would show, Your Honor, that the staff came to not believe that, that this defendant was placed in the nursing home in very late August or July 1st of 2001. And when she was initially placed in the nursing home, all they could do was believe the daughter who said she was exhibiting signs of Alzheimer's, and they were giving her medications of Alzheimer's. Well, they didn't have to believe it. And, in fact, there was testimony that she was a, I can't remember the exact term, a wild Texas lady, feisty, vibrant, and so forth. So they were able to observe that she was, in fact, relatively sophisticated and relatively lively and so forth. I think they noted that her demeanor was upbeat and happy. I don't think they found that she was particularly sophisticated and that the term vibrant necessarily means sophisticated or unsophisticated. Frankly, it was after day two. It was the police in October when she found that her money was gone. And when the police called the nursing home, it was the nursing home that said she's under medication for Alzheimer's, and the police then discounted the statement that she was, that she had made. And then when she called the police again, they did not even respond. And I would like to correct my opposing counsel. The law enforcement was not investigating in October 2001. It wasn't until October of 2002 that interviews of this victim were made by federal authorities investigating this case. It was in October after the police were called and the nursing home says the mother is on Alzheimer's medication. The police discounted that the mother kept persisting. And it isn't in the record, but they had actually found that the mother was down because she had no money using collector coins to buy sundries in the little local drug store available there. And they took action and then invited Adult Protective Services in. And Adult Protective Services is not a law enforcement agency. It is a community agency that works on behalf of elderly. And finally, in December, they got a pro bono attorney for this woman. By then, this defendant had purchased property, had taken with and cashed out the CD to pay for that property in total cash. Here's my question, I guess, about your argument. What you've described is an incredibly clever scheme by the defendant. But I'm not sure that's equivalent to describing a particularly vulnerable victim, which is the requirement of the particular guideline. And opposing counsel has made reference to the Viripol case. I think that's the case he was talking about. And, you know, the contrast is pretty marked between the dire situation of that victim, just as a victim, and this person. So how do we separate out the things that are just the cleverness of the criminal scheme versus the actual vulnerability of the victim? Because they're not the same. That's correct, Your Honor. And this Court made a very strong point of that in Rising Sun recently. But in Rising Sun, the Court said to look at two things, not just the mere circumstance. In that case, it was the remote location. But victims' personal characteristics plus the surrounding circumstances. The personal characteristics of this person are basically that she's widowed and she's far from where she has lived the bulk of her life. That describes a very large proportion of the population who's over 80, and we know that age alone doesn't create vulnerability. That's true, but it's not the only circumstance here. And then when you add to that that you have people telling the nursing home folks, and when the nursing home folks first call this defendant, they're saying mother's just confused. But see, that's the thing that is intriguing to me. It's the daughter's activities, the criminal activities that are so clever, but I don't know that that translates. If I say, you know, you have some dread disease, it doesn't make you vulnerable because you have that disease. It just makes me clever. It does if your personal characteristics make that more believable. And the personal characteristic of being 82 makes it much more believable that you have Alzheimer's than if you're only 62. And you add on, there's nothing in the sentencing guideline that says the defendant can't add or create circumstances that make the victim more vulnerable. And in this case, we have both personal and business mail at the request of the defendant being sent to the defendant. This defendant got the mother to give her a power of attorney, so the nursing home directs all mail to this defendant. We have her not knowing anyone in Montana except really this defendant, and we have this aura of Alzheimer's coming in, and then her personal car has gone to this defendant. And even after, in September, when the house in Texas is sold, that money goes directly into this defendant's account. But none of the cases that we've cited in our briefs or that I have looked at in the Ninth Circuit has said that the defendant can't do something to make their circumstance more vulnerable. And when you add to that this victim's personal characteristics, which are preexisting, I mean, it's not like she was a lawyer. She wasn't a stock salesperson. She had been living and residing in Texas with her husband, who was a retired house painter, and he died. And so the primary person that you share your life with is now dead. You're a widow, and your daughter comes down, and I think she became aware that money was available, and very quickly we're up to Montana. Within a month of being in Montana, there are calls to the nursing home. The day after she's in the nursing home, the daughter is spending the money buying houses, cashing this out, when the pro bono attorney writes a letter saying, please give the money back. The daughter then transfers the house in a quick claim deed to the boyfriend, James Dunkerley, and a $90,000 Edward D. Jones CD that the daughter had, out of the $300,000 she'd placed this money in a CD, got transferred to the boyfriend. As soon as this pro bono attorney files for summary judgment in civil court, the daughter declares bankruptcy, and the scheme proceeds. But when you look at the personal characteristics of this victim, and there are many cases where they say not just being old, but being old is a personal characteristic, and it made the whole thing more believable and delayed aggressive law enforcement action for long enough for this victim to dissipate the assets, and making it too late for anyone to have access to those assets. And although the nursing home came to understand that the mother didn't have Alzheimer's, in those initial few months they did not know that. And to merely say that she was much more upbeat and vibrant and a wild Texas lady when she first came into the nursing home and became progressively more depressed when she realized she had no money, no money to even go down and buy a comb or a new hairbrush or shampoo, because all of the money was gone. That becomes a result of the criminal conduct. Don't we have to look at the mother's personal characteristics as of the time the crime began, not at the result of the crime, because almost any crime, even if a non-vulnerable person, creates terrible results. So at the time the daughter committed this crime, the district court relied primarily on creating this false scenario of Alzheimer's, and on his assertion that she was unsophisticated, which I don't really see any support for in the record. But many of the things that you've talked about, being widowed and so on and so forth, I didn't see that as part of the district court's findings. So the court noted she was 82, unsophisticated, convinced those around her mother had Alzheimer's, that there was no car, that the power of attorney had been given, and therefore her power to do those things had been given up to the daughter, that the mail had been diverted, both personal and business, and that there was really no contact with anyone else other than this particular defendant. And just because in Rising Sun, even, the court wouldn't have, if the court had found something. So those that are really her personal characteristics are her age and her living in a nursing home. And an assertion, he didn't say that. I mean, I don't remember that. You may be correct. But as far as the district court's findings are concerned and the assertion that she was unsophisticated. He adopted the. Right. But those are the personal characteristics of her versus the crime. I see my time is up. I don't know if I can. Yes, please. No, please respond to Judge Grim. The pre-sentence report notes that she's widowed. So the court did in his specific area where he's making these findings, that he adopts the findings of the pre-sentence report. And there's nothing in this pre-sentence report that indicates that she's particularly sophisticated. She's not a lawyer. She hasn't worked for years. Well, most people aren't lawyers. She's far away. But it's the contrary. She has to be particularly unsophisticated for this to be relevant. When you target someone, there's nothing in this Court's decisions or the sentencing guidelines that say the defendant can't create something that makes the person more likely to be a vulnerable victim. And so when you add those personal characteristics to statements that this person is suffering Alzheimer's and elder abuse, not the elder abuse, the elder assessment also noted short-term memory loss. And the fact that this person is moving into the nursing home, those are circumstances that can be added. And it actually would make someone more culpable to add circumstances to that to make them more, I think, criminally depraved to target someone. And I think she was targeted because she's 82 and it becomes more believable that this person has Alzheimer's. Thank you. Thank you, counsel. Mr. Kelleher, you have some reserved time. I have a question. You referred to a case at 312 Fed 3rd, but you never gave us the name of it. And then I went through some notes and I discovered one of our law clerks found that case. I believe it's called Verapool. Is that right? Verapool, yes, Your Honor. Well, the problem with Verapool, from your point of view, is that the Court affirmed the determination of vulnerable victim, did it not? I'm not citing it as authority from my side, Your Honor. In fact, I don't like it. It doesn't help me. I just pointed it out to the Court that it was a case that I found over the weekend. But in the sense of a person being isolated and vulnerable, Frances Schwarzenberg, the wild, vibrant lady from Texas, who had the wherewithal to basically steal money from her stepchildren when her husband died, is a far cry from the second-grade, non-English-speaking Thai woman that was brought over and had her passport confiscated. Well, was there a finding by the Court about stealing money from her husband? I – well, it's – I mean, is that – was that considered at all in terms of the analysis that we have been talking about with your opposing counsel? I can't remember if it was explicitly brought out. It was an undercurrent. In the PSR, the mother said that there were problems with the estate. That's why she put her daughter's name, my client's name, on the CDs. And, of course, there was a restitution order for the stepchildren to get restitution from my client. So it was recognized that they had been – We're on a clear error standard of review here, I gather? Yes. Correct. Just a couple of things. As far as, for example, the mail being diverted, again, there's no causal connection there because the CDs were kept in a – one of these zipped bank bags in the mother's closet. Counsel, do we have to have a – do we have to have a causal connection? Or can it be enough that the appearance of vulnerability encourages the defendant's behavior? Well, first of all, I mean, the defendant targeted Frances Schwarzenberg just because that's her mother and she had the money, not that she was vulnerable particularly. Right, but she is in a position where she is less capable of defending herself than she might have been otherwise. Well, but the mother easily could have looked in that bank bag every day to see if those CDs were in there, and she didn't look for five weeks. She would have looked in what way, online? No, I'm saying that the actual CDs themselves were in a bank bag in the mother's closet. Oh, okay, the actual certificate. The actual CDs themselves. All she had to do was open that up, look, and see that they were in there. So she wasn't relying on bank statements or lack of bank statements. And as soon as she did look, she saw that she had photocopies, and she called the bank and said, what's going on? And that's when she found out that they had been cashed. So the mother had every opportunity to follow up on her financial affairs, regardless of whether she was in a nursing home or not. And apparently she was driven to the bank because the PSR said she got a ride to the bank or she went to the bank, rather, to check on the CDs. So, again, that takes away from the argument that she was isolated. I mean, just as a matter of fact, the mother was not vulnerable. She wasn't senile. She wasn't unsophisticated or no less sophisticated than your average person. The fact that she was a widow, she understood that part of this money belonged to her ex-light husband's children from a previous marriage, and yet she took that money to Montana. And she was not isolated in a nursing home. The staff was very helpful in connecting her with an elder attorney, in getting her to the bank, in ultimately law enforcement and so on and so forth. So as a matter of fact, she wasn't vulnerable. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bybee